Argued February 17; modified March 15, 1932

## CITY OF PORTLAND ex rel. NATIONAL HOSPITAL ASSOCIATION, Inc., v. HELLER et al.

### (9 P. (2d) 115)

L. A. *Recken,* of Portland (Senn & Recken, of Portland, on the brief), for appellant.

R. R. *Bullivant, of Portland* (Clark & Clark, of Portland, on the brief), for respondent.

CAMPBELL, J.   Plaintiff, the city of Portland, on relation of the National Hospital Association, Inc., sues Fred Heller and Paul Heller, a co-partnership, and the Metropolitan Casualty Insurance Company of New York, a corporation, to recover $405.46 which plaintiff claims is due by virtue of a certain contract, which we will later more fully discuss.

The cause was tried by the court without a jury, and judgment given against all defendants. Defendant Metropolitan Casualty Insurance Company appeals.

For the sake of brevity and convenience we will hereafter refer to the National Hospital Association, Inc., as the Association; to Heller Brothers as the contractor; and to the Metropolitan, etc., as the surety...

On December 7, 1926, the contractor entered into a written contract with the city of Portland, wherein he obligated himself to do certain work in clearing the ground surface of the entire area of what is known as the Bull Run Storage Basin, connected with the pure water supply of the city. In connection with this contract, and in compliance with Oregon Code 1930, § 67-1101, the contractor furnished a bond executed by himself and the surety. The only condition in this bond necessary for consideration in this case being, the contractor "shall fully secure and pay just claims, if any there be, of all persons furnishing labor or material under said contract." On December 2, 1926, the contractor entered into a contract with the Association wherein it promised and agreed to furnish certain medical and hospital services to the employees of the contractor on that particular work. For said services the contractor agreed to compensate the Association as follows:

"B. $1.50 per month for each and every employee of the party of the second part employed three or more days during any one calendar month, and who shall enter the employ of the party of the second part previous to the 21st day of any one calendar month, and so long as they are thus employed.

"C. 75 cents for each and every employee of the party of the second part who shall enter the employ of the party of the second part after the 20th day of one calendar month and who shall be employed three days

or more during that calendar month; provided that if such employee remains in the employ of the party of the second part into the next calendar month, he shall be required to pay under schedule B, as above stated.''

It is admitted that the Association performed the services and complied with all the terms of the contract to be performed on its part; it earned, under the contract, $1,434.46, and of this sum $1,029 has been paid; that there is due and owing from the contractor $405.46.

■ The question to be determined is: Is the surety liable under its bond for this amount? It is contended by the plaintiff that because the contractor collected this amount from the employees, such collection amounts to an equitable assignment of that part of the employees' wages to the plaintiff. It will be observed that the Association had no contract with the employees, and that the contractor bound himself to pay the compensation due plaintiff regardless of where he should get the money. There is no provision in his contract with the Association that he deduct any part of the employees' wages. It is admitted that the service rendered by the Association is not ''labor or material'' furnished under the contract of the contractor with the city of Portland for which the surety is bound. Unless the Association can be placed in the position of assignee of the employees, it cannot recover herein against the surety. The employees did not, at any time, owe the Association anything. When parties enter into a written contract and its terms are not vague or ambiguous, it is the province of the court to interpret and enforce it without adding thereto or subtracting therefrom: Oregon Code 1930, § 9-214.

Under the contract between the Association and the contractor, the Association was not concerned with

how or where the money was to come from to meet the contractor's obligation to it. The contract does not provide that a fund to pay the Association shall be created by deducting the amount from the employees' wages.

The instant case is easily distinguishable from those cited and relied upon by respondent. *U. S. Fidelity Co. v. Bartlett,* 231 U. S. 237 (34 S. Ct. 88, 58 L. Ed. 200), was a case where a bonded contractor entered into an agreement with Bartlett that Bartlett should open up a quarry belonging to the contractor, hire men for the quarrying of the stone used by the contractor, and maintain a commissary where the men might be supplied with provisions and merchandise. An account was to be kept of the articles bought, and if approved by the men, forwarded to the office of the contractor who would deduct the amount from the wages of the laborers. This practice being with their consent and credit Bartlett's account. The assignment by the laborers was admitted. The claim was that an equitable assignment did not clothe Bartlett with the legal right to maintain an action on the bond. In passing upon the question, the court says:

"But we think that the testimony discloses that so much of the laborers' wages as were necessary to satisfy Bartlett's advances were assigned to him with their consent and deductions to that extent made from such wages with their approval in such wise as to consummate an assignment."

*Hess v. Turney,* 207 S. W. 171, was a case where claims against a public contractor who was bonded with practically the same conditions in the bond as those in the instant case:

"During the progress of the work on the bridge, certain local merchants, the contractors and the labor-

ers entered into an agreement whereby the merchants were to furnish the laborers goods. The contractors were to pay for the same out of the wages due, and to become due such laborers and deduct the amount of such payments from the wages of said respective laborers.'' The court held that such an agreement amounted to an equitable assignment of the claims of the laborers to the merchants who furnished the laborer his goods under said agreement.

*McIlhenny v. Binz*, 80 Tex. 1 (13 S. W. 655, 26 Am. St. Rep. 705), was a case where:

''Claims by boarding-house keepers for board furnished to railroad laborers and operatives, by grocers for supplies furnished to the boarding-house keepers, under an arrangement whereby the company retained from the wages of the laborers the amounts due for their board, and credited the boarding-house keepers and grocers therewith, are properly treated as claims for wages assigned to the holders and allowed priority as such.''

In the instant case the contractor was liable for the amount due the Association and the laborer was not. It cannot be said that the laborer assigned a part of his wages for a debt or to an association that he did not owe. The contractor was to pay the Association, in any event, for its services, for which he attempted to recoup himself by deductions from the employees. That is, the compensation of the Association did not depend upon the deductions made from the employees' wages but on the agreement of the contractor to pay.

■ There appears to be a conflict of the decisions of the different courts in the interpretations of statutes similar to ours, yet they may all be considered as announcing the general principle, that: When there is an obligation on the employee of a contractor on public work to pay a third party a certain sum and the

employee agrees that such sum may be deducted from his wages earned on such work, there being no obligation on the contractor to pay the third party, but the contractor agrees to deduct and does deduct the amount from the wages of the employees for the benefit of the third party, such agreement and deduction is an assignment of said sum to the third party. Such sum thus deducted then represents a "just claim for labor" for which the surety on the bond is liable. This is the doctrine taught in *Fitzgerald v. Neal,* 113 Or. 103 (231 P. 645); *State ex rel. Hagquist v. U. S. Fidelity & Guaranty Co.,* 125 Or. 13 (265 P. 775).

It makes little difference whether we treat this cause as an action at law or as a suit in equity; in either event there is no evidence on which to base a finding and judgment against the surety.

There are some other matters presented regarding the procedure by which this cause has been presented to this court which we do not deem necessary to pass upon. Suffice it to say that while there may not be a strictly technical adherence to, there is a substantial compliance with the statutes and rules.

Having reached the foregoing conclusions, it follows that the judgment of the trial court must be modified and the cause remanded with instructions to set aside the judgment so far as it affects the defendant Metropolitan Casualty Insurance Company of New York and enter a judgment of dismissal as to it. This cause having been tried as an equity case, neither party to recover costs in this court.

BEAN, C. J., BROWN and BELT, JJ., concur.