**PIPELINE INDUSTRY BENEFIT FUND,**
Appellee,

v.

**AETNA CASUALTY AND SURETY IN-
SURANCE COMPANY, Appellant.**

No. 44786.

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 10, 1972.

Rehearing Denied Oct. 31, 1972.

Certiorari Denied Dec. 5, 1972.

Dyer, Powers & Marsh, by William K.
Powers, Tulsa, for appellee.

Johnson & Fisher, by Ted R. Fisher,
Tulsa, for appellant.

ROMANG, Presiding Judge.

This is an action on a contractor's per-
formance bond to recover health and wel-
fare fund benefits alleged to be due the
Pipeline Industry Benefit Fund. The case
was submitted to the trial judge on stipula-
tions and exhibits without the taking of
testimony. Judgment was rendered for
Benefit Fund in the amount of $1,797.40,
together with interest and an attorney fee
of $1,000.00. From said judgment, Aetna
has appealed.

On July 25, 1968, V & W Pipeline Con-
struction Company, as contractor, entered
into a contract with Central Illinois Public
Service Company for the construction of
gas transmission lines to four towns in the
State of Illinois.

On September 10, 1968, a contractor's
performance bond was entered into by V &
W Pipeline Construction Company, as
principal, and Aetna Casualty and Surety
Company, as surety. The Central Illinois
Public Service Company was named as ob-
ligee therein. The bond recites that "said
principal has entered into a certain written
contract with said obligee, dated the 25th
day of July, 1968, providing for the con-
struction of gas transmission mains," and
otherwise reads in pertinent part as fol-
lows:

"* * * for its own use and the use
and benefit of all persons or corpora-
tions who furnish labor or material to
said principal for use in performance of
the contract hereinafter mentioned,
* * *

* * * * * *

"NOW, THEREFORE, the condition of
the above obligation is such that

"If said Principal shall fully complete
and satisfy and perform all of its obli-
gations under said contract and all
extensions, alterations and variations
of said contract;

"And if said Principal shall satisfy all
valid claims and demands for injuries

or damage caused in the performance of said contract;

"And if said Principal shall pay in full all persons and corporations who have furnished Principal labor or materials under any nature of agreement, sale or employment for use in performance of said contract;

"And if said Principal shall indemnify and protect said Obligee from all damage or expense whatsoever which said Obligee may suffer by reason of the failure of said Principal to fully perform all its obligations under said contract;

"And if said Principal shall fully reimburse and repay said Obligee all outlay and expense whatsoever which said Obligee may incur in making good any default of said Principal;

"And if said Principal shall reimburse and repay said Obligee all outlay and expense, including attorney's fees, necessarily paid or incurred by Obligee in enforcing performance of any of the obligations of said Principal under said contract, or under this bond;

then this obligation shall be null and void, otherwise it shall remain in full force and effect.

\*　　\*　　\*　　\*　　\*　　\*

"The rights hereunder of persons or corporations furnishing labor or material to said Principal for use in performance of said contract may be enforced by bill in equity, but all such rights shall be subordinate to the prior right of said Obligee to fully indemnity and reimbursement as above provided."

On September 30, 1968, and October 1, 1968, agreements were entered into by and between V & W Pipeline Construction Company and said Benefit Fund. From the brief of the Benefit Fund is the following:

"The petition recites that the Plaintiff is an express trust created pursuant to the terms and provisions of the Labor Management Relations Act of 1947 as amended (Taft-Hartley) and that such express trust was created between the United Association, a labor organization, and the National Pipeline Contractors Association and other individual contractors signatory to such agreement in accordance with the 'National Pipeline Agreement.' That the Defendant contractor was a party signatory to such agreement and was engaged in interstate commerce constructing pipeline projects and particularly a pipeline venture for the Central Illinois Public Service Company.

"The National Pipeline Agreement in addition to spelling out the contractor's obligations for direct labor costs, provided that the contractor would contribute and pay into a health and welfare fund the sum of Fifty-five cents ($.55) per hour for each hour worked by the employees covered by that labor agreement, namely, pipeline welders and apprentices.

\*　　\*　　\*　　\*　　\*　　\*

"a. The contractor's obligation to pay these amounts unto the Plaintiff was a part and parcel of the entire negotiated labor agreement referred to herein as 'National Pipeline Agreement.' There was no separate or side agreement pertaining to the contractor's obligation for this amount of money for hospitalization, life insurance and pensions but they were considered as a part of the consideration to be paid for the services returned by the members of the union.

"b. The Aetna Casualty and Surety Insurance Company is a surety for hire and engages in the business of furnishing bonds for a premium.

. "ISSUE PRESENTED

"Is a surety for hire of a labor and material bond liable for the principal's obligations for all labor costs including the cost for hospital care and pension benefits."

The question as stated by Aetna in its brief is as follows:

"The principal legal question involved in this Appeal is whether or not the

Bond of Aetna covers the fringe benefit items set forth in Article XIV of the Pipeline Agreement between V & W Pipeline Construction Company and the Pipeline Industry Union."

The statutes of Oklahoma define wages as follows:

" 'Wages' means compensation owed by an employer for labor and services rendered, whether the amount is determined on a time, task, piece, commission or other basis of calculation." 40 O.S.1961, § 165.1(c).

" 'Wages' means all remuneration for services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. Gratuities customarily received by an individual in the course of his work from persons other than his employing unit shall be treated as wages received from his employing unit." 40 O.S.1961, § 229(l).

As the Oklahoma Supreme Court has not passed on the question as to whether the term "wages" includes payments into a health and welfare fund based upon each hour of work of the employees covered by a labor agreement, we must look to other jurisdictions in an effort to arrive at a correct decision.

■ It appears to this court that the payment of the health and welfare fund benefits based upon hours of work was a part of the overall labor costs which should have been within the contemplation of the contractor and the bonding company at the time the performance bond was executed.

In United States of America v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), the U. S. Supreme Court held a surety on a general contractor's payment bond liable for delinquent contributions to a health and welfare fund to which the contractor was required to pay under a collective bargaining agreement. The contract was with the United States for the construction of buildings at an Air Force base in California. The Carter perform-

ance and payment bond contained a like provision, namely:

"If the Principal shall promptly make payment to all persons supplying labor and material."

Carter was to pay the trustees of the health and welfare fund 7½ cents for each hour of work by his construction employees. In the instant case, the contractor was to pay to the trustees of the health and welfare fund involved the sum of 55 cents for each hour of work by its construction employees. In the opinion of the Carter case, supra, the court said:

"It is undisputed that if the collective-bargaining agreement had required the contractor to pay each employee 7½ cents per hour above the prevailing wage rate, and the employee had, by contract with his bargaining representative, agreed to contribute that sum to the fund, the surety would have been obligated to make good any default in the contractor's payment of that extra 7½ cents per hour. The surety argues that employer contributions made directly to a health and welfare fund should be treated differently. It contends that, under the provisions of the trust agreement, the unpaid contributions are not 'wages' due to Carter's employees, and that the employees, having received all the 'wages' owed to them, have been 'paid in full' as that term is used in § 2(a) of the Act. The Act, however, does not limit recovery on the statutory bond to 'wages.' The parties have stipulated that contributions to the fund were part of the consideration Carter agreed to pay for the services and laborers on his construction jobs. The unpaid contributions were a part of the compensation for the work to be done by Carter's employees. The relation of the contributions to the work done is emphasized by the fact that their amount was measured by the exact number of hours each employee performed services for Carter. Not until the required contributions have been made will Carter's employees have

been 'paid in full' for their labor in accordance with the collective-bargaining agreements.

\* \* \* \* \* \*

"Moreover, the trustees of the fund have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account. The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor. The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers. For purposes of the Miller Act, these contributions are in substance as much 'justly due' to the employees who have earned them as are the wages payable directly to them in cash."

In Carter v. Board of Review, 323 P.2d 362 (Okl.1958), the court stated:

"Admittedly, no services were rendered by claimants for Douglas during the period immediately following the dates of their respective discharges, but claimants did receive wages, for we think it is obvious that the vacation pay and sick leave pay which they received constituted wages and were not gratuities. Such payments were required by the terms of the collective bargaining agreement negotiated between the labor union and Douglas, and therefore do not fall under exception (4) of the statute above quoted as dismissal payments which the employing unit was not legally required to make by law or contract."

In Carter v. Board of Review, supra, the Oklahoma Supreme Court does not place a narrow interpretation on the word "wages." 18 O.S.1961, § 483, reads as follows:

"The rule of the common law requiring a strict construction of the obligations of a surety shall have no application to the obligations of a surety or guarantor or indemnitor for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance."

In Genix Supply Co. v. Board of Trustees of H. & I. Fund, 84 Nev. 246, 438 P.2d 816 (1968), the court said:

"Simply because some of the workman's pay goes into a fund for his sickness and old-age security instead of in a paycheck does not alter the fact that the fringe benefits are a result of his own efforts the same as the money he puts in his pocket."

In Bernard v. Indemnity Ins. Co. of North America, 162 Cal.App.2d 479, 329 P.2d 57 (1958), involving a similar question the court said:

"It is our conclusion that the contributions sought to be recovered are directly related to the work performed in the construction of the school projects by the Contractor. The amounts became due solely because the work was performed, and the sum is measured by the number of hours of work performed.

"The legislature intended to protect the laborer as to every element of his compensation, whether that compensation be an hourly wage, or whether it be an hourly wage plus other benefits, and the novelty of the health and welfare provisions of the contracts does not in any wise prevent the contributions therefor from being considered as payments for 'any work or labor' on the bonded project."

We hold that the bonding company, under the bond herein, is liable for the defaulted health and welfare payments which we consider to be a part of the labor costs.

There remains one additional question for decision, and that is the allowance of the attorney fee. The parties stipulated that $1,000.00 would be a reasonable attorney fee, and under 12 O.S.Supp.1970, § 936, the prevailing party was entitled to an attorney fee.

The judgment of the trial court is hereby affirmed.

BAILEY, and BOX, JJ., concur.