**UNITED STATES of America, For the Use of ANCHORAGE HELICOPTER SERVICE, INC., Plaintiff,**

v.

**SARGENT–TYEE CO., INC., et al., Defendants.**

**No. 3823.**

United States District Court, E. D. Washington.

March 29, 1974.

W. F. Nielsen of Hamblen, Gilbert & Brooke, Spokane, Wash., Peter A. Lewi, Los Angeles, Cal., for plaintiff.

Stuart G. Oles, of DeGarmo, Leedy, Oles, & Morrison, Seattle, Wash., Stephen Drummond of Brown & Thayer, Spokane, Wash., for defendants.

## MEMORANDUM OPINION

NEILL, Chief Judge.

This action under the Miller Act involves written and oral agreements for the use of helicopters on a power line construction project near Clarkston, Washington. A purchase order dated May 19, 1972 reads:

"Furnish Bell 205–A1 at Lewiston, Ida. by June 10, 1972. This includes pilot—mechanic—fuel—spare hook—P.A. System, fuel truck.

Rate $550 per hr.

Est. time is 5 wks with a minimum of 100 hrs. The time may be extended at the same rate with a 3 hr. per day guarantee.

The proper insurance will be furnish (sic)—before starting."

Subsequently, by oral negotiations, the 5-week period of use of the large (Bell 205) helicopter was extended and use of smaller (F1100) helicopters were added to the project.

Issues arising under the initial purchase order agreement for 5 weeks' use of the Bell 205 will be considered. There is no real dispute that the term "hours" refers to flight hours as measured by aircraft recording devices commonly referred to as "Hobbs Meters" or by stopwatches. However, the parties disagree as to whether the term "day" refers to calendar days, as contended by plaintiff, or only days on which the helicopters were used by defendants, as contended by defendant.

█ Plaintiff attempted to show a custom and usage in the helicopter industry that the term "day" in such contracts refers to calendar days, but there was no showing that defendants were either in the industry or aware of the custom. It is true that in ordinary usage a day is considered as a calendar day, but in construing an agreement, the Court must look to all factors tending to indicate the intention of the parties. In this instance a reasonable interpretation of the term leads to the conclusion that the term refers to days of the ordinary 5-day work week during which the Bell 205 helicopter was available to the defendant.

█ There is no dispute that the Bell 205 was to be furnished for 5 weeks with a guaranteed minimum of 100 hours of flying time. Plaintiff contends that the 5-week period started on June 6 whereas defendant contends that it started on June 9. Plaintiff was not consistent in its claim as to the starting date. It first billed defendant for use commencing June 9, 1972, later billing with a June 6th starting date. The evidence indicates that the first use of the Bell 205 by defendant was on June 9. The Court finds that the guarantee period is the 5 weeks from June 9 through July 13, 1972.

The evidence is that the 100-hour minimum flying time was not met during the 5 weeks. Therefore, the guarantee applies and defendant owes plaintiff $55,000.00 for the use of the Bell 205 from June 9 through July 13, 1972.

The oral agreement that governed the use of the Bell 205 after July 13 is one of the major disputes between the parties. Defendant asserts that a new agreement was made; whereas, plaintiff contends that the extension clause of the original purchase order contract was in force.

From July 14 through August 11, 1972 (the 205 was not available to defendant between August 12 and August 31) the flight hours exceeded the minimum guarantee time even under plaintiff's interpretation of the guarantee clause. The Court finds that 100 hours is a reasonable number of hours for this 29-day period, creating an additional obligation of defendant to plaintiff of $55,000.00.

There is substantial dispute as to whether the guarantee clause remained in effect after the Bell 205 helicopter returned on August 31. The evidence indicates that at some time agents of the parties did reach an agreement whereby plaintiff agreed to waive the 3-hour daily minimum guarantee in return for plaintiff's promise to return two of plaintiff's employees to defendant's payroll and to give plaintiff several days advance notice in requesting use of the Bell 205.

This "side arrangement" whereby plaintiff's employees were to also be on defendant's payroll, thus creating conflicting loyalties and probable violation of the agents' duties to their respective principals, has permeated this litigation. However, the Court concludes that whatever may be the claim of the principals as against their agents, such violations are not material to the issue at bench. Assuming the lack of authority of plaintiff's agent to make a new contract, it was clearly within the authority of defendant's agent to terminate the purchase order agreement. Accordingly, the continued use of the Bell 205 was, at least, on the basis of quantum meruit. The Court finds that $550.00 per hour continued as the reasonable rate for the actual use of the Bell 205.

The date of the new arrangement eliminating the 3-hour guarantee as reached by the agents is in dispute. Plaintiff contends that the agreement was made early in October and defendant contends it was made in early September. It seems most probable that the new agreement was made because defendant felt certain that the minimum guarantee time could not be met in stringing or "pulling" the power lines. By early September the construction had progressed through the building of the tower bases and setting of towers, these being the phases of construction for which use of the Bell 205 was originally intended. The pulling or stringing of the conduit was next in order. The helicopter flight sheets reveal that most of the stringing was done in September and that the work was substantially completed in early October. Furthermore, the two employees of plaintiff had been returned to defendant's payroll in September. This evidence convinces the Court that the agreement was made early in September of 1972.

September 8, 1972 will be fixed as the final day of the guarantee period. The fixing of such a date involves some speculation, but a number of factors make this date the most likely date of the agreement. First, the testimony indicated that the agreement was made on a weekend. The weekend of the 9th and 10th was the second weekend after the helicopter returned from fire fighting for the Forest Service. Second, this date would have given defendant one week on the stringing operation, which should have been sufficient time to realize that the previously guaranteed minimum time would not be met.

From August 31st through September 8th, the minimum guarantee hours were not met. Therefore, the guarantee hours determine the billing rate, which is 21 hours at $550.00 per hour. Thus, the total owed plaintiff for this period is $11,550.00.

For the use of the Bell 205 from September 9th to termination, the Court finds 46 hours to be a reasonable allow-

ance. Thus, defendant owes plaintiff $25,300.00 for the use of the Bell 205 after September 8, 1972.

Turning then to the use by defendant of plaintiff's FH–1100 helicopters, the terms of the agreement as to such use are entirely oral, and as might be expected, are in dispute. Plaintiff's agent, Mr. Chisum, testified that defendant's superintendent on the project, Mr. Seawel, was told that the rate was to be $180.00 per hour with a contract or $200.00 per hour without a contract. Seawel claimed that the rate was to be $180.00 per hour although he admitted hearing Chisum's statement concerning a contract. Further, in October Seawel initiated a written contract dated the last of June covering this use at the rate of $180.00 per hour but such contract was never completed by defendant's officials. From these facts the Court concludes that a contract was not supplied to plaintiff, the parties did not reach any agreement as to the terms of a contract, and that the rate for use of the FH–1100's was $200.00 per hour.

The testimony revealed that there had been some deliberate falsification by plaintiff of the flight time sheets for the FH–1100's. Under these circumstances and considering the conflicting evidence the Court finds that 640 hours should be allowed for the use of the FH–1100's. Therefore, defendant owes plaintiff a total of $128,000.00 for the use of the FH–1100 helicopters.

■ Obligation for payment of federal airport taxes was an issue but at trial the defendant took the position that the appropriate method for contesting this tax would be for the defendant to pay the tax and then contest the payment with the government. Therefore, defendant should indemnify plaintiff as to any liability of plaintiff for payment of those federal taxes.

■ Plaintiff seeks an award of prejudgment interest from November 26,

1972. The relevant Washington cases on this question, Prier v. Refrigeration Engineering Co., 74 Wash.2d 25, 442 P.2d 621 (1968) and Mall Tool v. Far West Equipment Co., 45 Wash.2d 158, 273 P. 2d 652 (1954), dictate that this claim should be considered to be liquidated and the payment of prejudgment interest should be allowed. *See* Elte, Inc. v. S. S. Mullen, Inc., 469 F.2d 1127 (9th Cir. 1972).

■ Finally, plaintiff seeks attorney's fees. Such an award appears to be compelled under the reasoning of the Ninth Circuit Court of Appeals in United States v. Rich Industrial Lumber, 473 F.2d 720 (9th Cir. 1973).* Such fees are allowed by Washington's "Little Miller Act", R.C.W. 39.08.010 and R.C. W. 39.08.030. It is true that there is some authority in this district denying attorney's fees in a Miller Act case. United States v. Hoffman Construction Company, 163 F.Supp. 296 (1958). That case has been overruled by subsequent case law, United States for Use of Halton Tractor Co. v. Woodland Sand and Gravel, Eastern District of Washington, # 2276 (1966) and should no longer be considered as good authority on this point.

Plaintiff submitted a summary of its attorney's hours and expenses, which are not contested by defendant. Accordingly, the Court finds that a reasonable attorney's fee is $14,500.00.

In summary, the Court finds plaintiff entitled to judgment for $237,850.00, being the aggregate of the use indebtedness of $287,850.00 less the $50,000.00 previously paid by defendant, which judgment shall bear interest from November 26, 1972. Plaintiff is further entitled to judgment of $14,500.00 for attorney's fees and for costs.

Counsel may submit findings, conclusions and judgment in accordance herewith.

---

* *Editorial Note:* Since the writing of this opinion, the Supreme Court of the United States has overruled the position taken by the Ninth Circuit with respect to fees in Miller Act cases. See F. D. Rich Co. Inc. v. United States, 94 S.Ct. 2157.