[No. 43766.    En Banc.    December 24, 1975.]

JAMES CRABTREE, ET AL, *Petitioners*, v. LANAY LEWIS, ET AL,
*Respondents*.

*John Ranquet* and *Barbara Barnhart*, for petitioners.

*Macbride, Sax & MacIver*, by *D. Gordon Willhite*, for respondents.

ROSELLINI, J.—This action was brought by the trustees of three employee benefit funds to recover contributions alleged to be due the trusts from a painting subcontractor, LaNay Lewis; his prime contractor, Adhesive Engineering Company; its surety, Insurance Company of North America, and the City of Seattle's retained percentage of the contract payments owed.

The City of Seattle paid the retainage into court and certified to the court that it had contracted with Adhesive Engineering Company to clean and repair two bridges and that the trustees of the painters' trust had filed their claim with the City. It took no further part in the action.

Lewis, the subcontractor, defaulted.

The other parties made cross motions for summary judgment, with supporting affidavits. The trial court granted judgment in favor of the trustees against Lewis for the contributions claimed to be due but dismissed the other defendants, ordering the retainage paid over to the contractor. The trustees appealed to the Court of Appeals, which sustained the dismissal upon the ground that the trustees' supporting affidavits were not competent evidence and did not establish the amount of contributions owed by the defendant.

We granted the trustees' petition for review.

The issues presented are: (1) Do the trustees have standing to bring this action? (2) Are the retainage and the contractor's surety subject to claims for contributions to fringe benefit funds required by the union contract to be made on behalf of the subcontractor's employees, which were not paid by the subcontractor? (3) Was the Court of Appeals correct in sustaining the dismissal of the action upon the ground that the plaintiffs' affidavits did not show facts necessary to maintain their claim, including the names of the employees, and the amount of damage?

As the Court of Appeals stated in its unpublished opinion, the pleadings and admissible affidavits considered by the trial court at the hearing on the motions for summary judgment, established the following uncontroverted facts: The City of Seattle contracted with Adhesive Engineering Company to paint the Fremont and Ballard bridges. Adhesive, as prime contractor, subcontracted with Lewis to do the work. Insurance Company of North America furnished the bond required by RCW 39.08.010. The City withheld the sum of $10,378.37 from payments due Adhesive, to insure payment of laborers, materialmen and subcontractors, as required by RCW 60.28.010.

Prior to the foregoing events, the Seattle-King County Chapter of the Painting and Decorating Contractors of America, which was the bargaining agent for Lewis, entered into a collective bargaining agreement with the painters' union. This agreement obligated the employers to pay a certain amount for each employee into three trusts, which were established to provide fringe benefits for painter employees. Lewis reported and paid into those trusts from July 21 to September 29, 1972. The trustees claim that he owes contributions for the period between October 1, 1972, and January 1, 1973, during which time he was engaged in painting the bridges.

The superior court, in granting summary judgment, said that there was a material issue of fact respecting the plaintiffs' motion and no material issue of fact respecting the defendants' motion, but it did not disclose the theory of its decision. So we must assume that it was based upon one or the other of the two theories in the answer and affidavits of the defendants, as developed and expounded in the defendants' brief in the Court of Appeals. One of these is that the trustees have no standing to bring this action on behalf of the employees who performed the work. It is suggested that the trustees cannot sue in a representative capacity unless they can produce written assignments of the claims of each employee. The one authority cited, *Portland ex rel.*

*Nat'l Hosp. Ass'n v. Heller*, 139 Ore. 179, 9 P.2d 115, 81 A.L.R. 1048 (1932), held that a contractor's surety was not liable to a hospital association for the contractor's failure to pay an amount due under a contract for medical and hospital services to employees, because the amount was owed by the contractor and not by the employees; therefore the association did not stand in the position of assignee of the employees. The court also said that the services rendered by the association were not "labor or material" furnished under the contractor's agreement with the city, for which the surety was bound.

The Oregon court did not consider the fact that the contract between the contractor and the association was entered into for the benefit of the employees and that the benefits contracted for were a part of the compensation paid for labor. It is not impressive authority for the proposition that a trustee of a fund established for the benefit of employees cannot sue to recover payments owed the fund.

■ This question came before the United States Supreme Court in *United States v. Carter*, 353 U.S. 210, 1 L. Ed. 2d 776, 77 S. Ct. 793 (1957). That action involved the Miller Act, 40 U.S.C. § 270a, which required a contractor who had a contract with the United States for the construction of federal buildings to furnish a payment bond with a surety. The collective bargaining contract, under which the employees of the contractor were hired, obligated the contractor to pay them wages at specified rates and, in addition, to pay 7½ cents per hour of their labor to the trustees of a health and welfare fund established for their benefit and that of other construction workers. When the contractor failed to pay in full the required contributions to the health and welfare fund, the trustees of the fund sued the surety to recover the balance due the fund, plus liquidated damages, attorney fees, court costs and expenses. The Supreme Court held that the trustees stood in the shoes of the employees and were entitled to enforce their rights, saying, at page 220:

The trustees are claiming recovery for the sole benefit of

the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor. The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers. For purposes of the Miller Act, these contributions are in substance as much "justly due" to the employees who have earned them as are the wages payable directly to them in cash.

The trustees in that case were in the same position as the trustees are in this case. We have a statute, RCW 39.08, which protects those who supply labor and materials on government contracts in much the same way as the Miller Act does. The federal court for the Eastern District of Washington has termed this statute Washington's "Little Miller" Act. *United States v. Sargent-Tyee Co.*, 376 F. Supp. 1375 (E.D. Wash. 1974).

Further, in RCW 60.76.020, the legislature has expressly recognized the right of a trustee to sue on behalf of employees. RCW 60.76.010 gives the employee beneficiary of a contract whereby the employer is required to make payments to a benefit plan, a lien upon the employer's earnings and business property for any unpaid contributions and also for expenses incurred by him for benefits to which he would have been entitled under the plan. If the trustees are proper persons to represent the employees in enforcing a lien against property of their employer (here the subcontractor), they are also proper persons to enforce their claim against the retainage and the bond. The authority conferred upon them by the union members is the same, and the same fund will receive the benefits. That the union contract authorizes the trustees to collect the moneys due the fund is not contested. No assignment, further than that which is implicit in the union contract, is necessary.

We are convinced that the trustees have standing to bring this action to recover contributions owed to the benefit fund. Our holding accords with the general rule. 48 Am. Jur. 2d *Labor and Labor Relations* § 225 (1970); 51 C.J.S. *Labor Relations* § 122 (1967).

Upon the second question presented, the defendants

here—that is, the prime contractor and its bondsman—maintain that they owe no duty to the trustees because they had no dealings with the employees or the union. This position ignores the express provisions of RCW 39.08.010. That sections provides:

> Whenever any . . . body acting for the . . . municipality . . . shall contract with any person or corporation to do any work for the . . . municipality, . . . such . . . body shall require the person or persons with whom such contract is made to make, execute and deliver to such . . . body a good and sufficient bond, with two or more sureties, or with a surety company as surety, conditioned that such person or persons shall faithfully perform all the provisions of such contract and pay all laborers, mechanics and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of such work, which bond shall be filed . . . and *any person or persons performing such services or furnishing material to any subcontractor shall have the same right under the provisions of such bond as if such work, services or material was furnished to the original contractor:* . . .

(Italics ours.)

RCW 60.28.010, providing that public bodies shall reserve moneys earned by the contractor on estimates during the progress of work on public improvements, a sum equal to 10 percent of the first $100,000 and 5 percent for all amounts over $100,000 on such estimates, said sum to be retained as a trust fund, contains a similar provision. The fund is retained for the

> protection and payment of any person or persons, mechanic, subcontractor or materialman who shall perform any labor upon such contract or the doing of said work, and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work, . . .

The statute gives a lien to every person performing labor or furnishing supplies toward the completion of the improvement or work.

It was contended by the defendant contractor in *J.D. English Steel Co. v. Tacoma School Dist. 10*, 57 Wn.2d 502, 358 P.2d 319 (1961), that only creditors of the prime contractor were entitled to a lien upon the retained percentage, citing *Maryland Cas. Co. v. Tacoma*, 199 Wash. 384, 92 P.2d 203 (1939). This court said that claimants who furnish labor or materials to a subcontractor, participating in public works projects, are entitled to share in the retained percentage. This was patently the legislative intent.

Under Laws of 1888, § 1, p. 15, the predecessor of RCW 39.08.010, which did not expressly guarantee payment of employees of subcontractors as does the current legislation, this court held that the bond required by the act protected anyone who furnished labor upon a public work, whether he was hired by the contractor or subcontractor, noting that the purpose of the act was to give the same relief by a proceeding on the bond as could be had, in the case of the erection of a building by a private owner, by the enforcement of a lien against such building. That the statute as subsequently amended to expressly protect subcontractors serves the same purpose was recognized in *Hall & Olswang v. Aetna Cas. & Sur. Co.*, 161 Wash. 38, 296 P. 162 (1931), and *Neary v. Puget Sound Eng'r Co.*, 114 Wash. 1, 194 P. 830 (1921).

Thus it appears that the statutes require not only that the bond which is furnished the prime contractor shall run in favor of the subcontractor's employees, but also that such employees shall have a lien upon the retained percentage.

The defendant prime contractor paid the subcontractor but evidently did not see to it that the laborers were paid in full. These statutes make it incumbent upon him to do so or risk the loss of the retained percentage, as well as exposure of his surety to liability.

The defendants have not questioned the status of fringe benefits as an element of compensation for labor. The legislature has so characterized them in RCW 39.12.010, defining prevailing wages on public works, which provides:

(1) The "prevailing rate of wages", for the intents and purposes of this chapter, shall be the rate of hourly wage, usual benefits, and overtime paid in the locality, . . .

. . .

(3) The "usual benefits" for the purposes of this chapter shall include the amount of:
(a) The rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program; . . .

The United States Supreme Court, in *United States v. Carter*, 353 U.S. 210, 1 L. Ed. 2d 776, 77 S. Ct. 793 (1957), held such fringe benefits to be a part of the payment for labor which was required to be covered by the contractor's bond. Decisions of state courts in accord include *Bernard v. Indemnity Ins. Co. of N. America*, 162 Cal. App. 2d 479, 329 P.2d 57 (1958); *Martin v. William Casey & Sons*, 5 App. Div. 2d 185, 170 N.Y.S.2d 228 (1958), *aff'd*, 8 N.Y.2d 728, 201 N.Y.S.2d 104, 167 N.E.2d 646 (1960); *Genix Supply Co. v. Board of Trustees*, 84 Nev. 246, 438 P.2d 816 (1968); and *Pipeline Indus. Benefit Fund v. Aetna Cas. & Sur. Ins. Co.*, 503 P.2d 1286 (Okla. App. 1972), *rehearing denied*, *cert. denied*.

The facts established by the pleadings and other documents before the court, then, show that the trustees have a claim against the bond and retained percentage. The Court of Appeals, nevertheless, was of the opinion that the superior court properly dismissed the action because of defects in the plaintiffs' affidavits.

This brings us to the third question before the court for consideration.

█ The Court of Appeals said that the record before the trial court did not establish that Adhesive owed the trust a sum certain and therefore, it said, the court properly dismissed Adhesive, its surety, and the City of Seattle. No authority was cited for this conclusion.

If the established facts show that the trustees are entitled to some relief, the fact that the amount of damage has not at this point been established should not deprive them of their day in court. Proof of the terms of the contracts,

assuming they may be necessary to establish the amount of damage, should not be difficult, since all of them are admittedly in writing.

The affidavit of the plaintiffs' attorney offered a transcript of the record of employee hours worked during the disputed period, which the attorney allegedly gleaned from an examination of the records furnished by the defendant City. The record does not disclose that the defendants raised any objection to the sufficiency of these affidavits to show the facts alleged therein. Their response by affidavit of the treasurer of Adhesive was that a fact question was presented as to the proof of dates and hours worked by each employee of the subcontractor, whether the employees were all union members, and whether the plaintiffs had permission to bring their action on behalf of the employees. There was no denial that some contributions were due and owing.

The affidavit stated that Adhesive had had no dealings by contract or otherwise with any of the plaintiffs or with the laborers on the subcontractor's job. There was no assertion that the bond furnished by the defendant insurance company did not guarantee payment of the laborers performing work for subcontractors or that the retainage did not protect such laborers.

■ Deficiencies, such as failure to attach certified copies of documents to an affidavit, can be corrected by an appropriate motion in an action by the trial court. Where the record does not reveal a motion to strike made before the entry of judgment, the deficiency may be deemed waived. *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 431 P.2d 216 (1967).

While the affidavit of the attorney was not the best evidence available to prove the amount owed, it was controverted only in part and that by an equally if not more vague assertion that not all of the employees were union members and that the defendant Lewis' records were not "reliable."

■ An attorney's affidavit based upon personal knowl-

edge is entitled to the same consideration as that of any other affidavit based upon testimonial knowledge. *Meadows v. Grant's Auto Brokers, Inc., supra.* Here the affidavit of the attorney showed that he had examined the defendants' records and they revealed that a certain number of hours of labor had been performed during the period in question, upon which the contributions were to be computed at the rates provided in the union contract. The affidavits of the defendants made no showing that the names of the employees or the number of hours worked by each were necessary facts to be shown under the union contract. If that contract required only that contributions be made on the basis of total hours worked, the identity of the employees and number of hours worked by each was immaterial.

While the attorney's affidavit was not the best evidence of the contents of the records, the accuracy of his transcript was not challenged nor was it contended that he should have produced the defendants' records or certified copies thereof. The affidavit was adequate, in any case, to show that evidence of the amount of damage was obtainable and that is was in the possession of the defendants. The fact that the defendants disputed the reliability of the subcontractor's records and contended that some employees were not entitled to the fringe benefits does not defeat the trustees' claim. It merely raises an issue of fact as to the amount of damage and issues of law as to the basis of determining the damage. Those issues could not be resolved in the defendants' favor upon the assertions made in their affidavits.

Since the record shows that the amount due was in dispute, the Court of Appeals erred in sustaining the dismissal upon the ground that the trustees had not established their right to a sum certain in their supporting affidavits. There was before the court a genuine issue of material fact.

Since the established facts show that the trustees have standing to bring the action and have a valid claim against the bond and the retainage, the courts below erred in dismissing the action. Summary judgment should have been entered for the trustees on these issues, leaving the matter

of damages to be tried,[1] with the burden being upon the defendants to show wherein the public records were inaccurate. It is their burden to establish, if they can, the validity of their partial defense that some of the employees were not union members and that no contributions for such employees were required under the contract.

Another matter not yet resolved is the trustees' right to attorney fees and other expenses incurred in pursuing this claim. We assume that, on remand and at the conclusion of the hearing on the question of damages, the court below will decide this question in accordance with the provisions of RCW 39.08.030, RCW 60.28.020 and the terms of the pertinent contracts.

The judgment of the Court of Appeals is reversed, and the cause is remanded to the superior court for further proceedings.

STAFFORD, C.J., and FINLEY, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

---

[1]"If on motion under the rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly." CR 56(d).