[No. 30548. Department One. July 8, 1948.]

HUGH ADAMS et al., Appellants, v. THE CITY OF SEATTLE et al., Respondents.[1]

[1]Reported in 195 P. (2d) 634.

*Rhodes & Franklin,* for appellants.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondents.

SIMPSON, J.—Plaintiffs, as employees of the city of Seattle, sought a writ of mandate to compel the civil service commission of the city of Seattle to either announce the results of an examination for maintenance laborer or hold another examination, and establish an eligible list for the position, and further, to restrict certification for the position to persons on the eligible list.

After the trial, the court entered judgment denying the writ. Plaintiffs appealed.

The assignments of error are:

"The court erred in entering judgment for the defendants.
"The court erred in denying appellants' motion for a new trial.
"The court erred in admitting in evidence defendants' Exhibit 6 and defendants' Exhibit 8."

Prior to 1938, the duties now discharged by maintenance laborers were performed by general laborers, the adaptable men being selected by the heads of the city departments. During the year 1938, a private group known as the public administration service recommended that the duties be segregated and positions known as laborer, utility laborer, and maintenance laborer, be created. The new positions were created by ordinance.

It is an undisputed fact that the laborer learned his skill while working on the various jobs. Between 1938 and 1946, the civil service commission was continually confronted with the problem of classifying the position of maintenance laborer. At least two examinations were prepared and canceled. Then an examination was prepared, approved, and given by the commission on June 27, 1946. As the result of experience, study, and examinations, the commission on

October 16, 1946, concluded that it was not possible to give a practical examination which would fairly test the capacity of the persons examined to discharge the duties to be performed by maintenance laborers. The commission determined that a person qualified as laborer could only demonstrate his adaptability for one of the many types of maintenance laborer positions by service on the job for a period of over two years. The position taken by the commission is best shown by the following excerpt from its report to the city council:

" 'The Commission then brought up the classification of Maintenance Laborer and after careful consideration, it was regularly moved by Commissioner Cutting that the department's report and recommendations be adopted, said report recommending that—

"(1) The results of the recent examination be disapproved;

"(2) The examination be canceled;

"(3) Steps be taken to return the examination fees of all applicants;

"(4) The positions now called Maintenance Laborer for pay distinctions be classified, with respect to civil service examinations, as coming within the class of Laborer;

"(5) The three existing specifications for Laborer, Utility Laborer and Maintenance Laborer be rewritten into a single Laborer specification with sub-groupings for designating pay rates and combining the duties now shown under the three P.A.S. titles; and

"(6) The positions called Maintenance Laborer be filled by assignment of regular Laborers, subject to check and approval of the Civil Service Department.

.    .    .    .    .    .    .    .    .    .    .    .

"In connection with the Commission's action on this matter, it was further ordered that all existing assignments of regular Laborers to Maintenance Laborer be recognized and that future assignments be limited to Laborers who have had at least two years' regular service, and that no assignments be terminated without approval of the commission.' "

The revised specifications ordered by the commission were submitted to the city council January 13, 1947, and adopted.

The civil service code (Art. XVI, § 3—Charter) of the city of Seattle provides:

"The Commission shall classify, with reference to the examination hereinafter provided for, all the offices and places of employment in the public service of the city, except the offices and places mentioned in Section 11 of this article. Classifications shall be made so as to place each type of service in a separate group and by dividing each group into grades on the basis of equivalent functions and responsibilities. . . ."

The 1947 salary ordinance (No. 75600) contained the following provisions:

"Section 31. The titles of positions in this ordinance refer to the Class Specifications of the City of Seattle for 1938 (Comptroller's File No. 159718-2), with such changes heretofore or hereafter adopted by the City Council and filed with the City Comptroller and ex-officio City Clerk. Titles and salaries herein shall apply only to those positions having duties within the reasonable scope of the specifications for such positions."

Rule I of the civil service rules of the city of Seattle provides:

"*Class*—A group of positions sufficiently similar in respect to duties and responsibilities so that the same title may be applied to each position, substantially the same qualifications may be required, and approximately the same salary range may be applied with equity.
"*Classes, Series of*—Two or more classes similar as to line of work and differing as to responsibility and difficulty, arranged in a ladder of steps in a normal line of promotion. (Referred to in Charter as 'type of service', and 'same class of service'.)"

Appellants contend that, where the position of maintenance laborer has been created by ordinance, the civil service commission cannot reclassify the position for purposes of examination or certification. They rely upon *State ex rel. Olson v. Seattle*, 7 Wn. (2d) 379, 110 P. (2d) 159. On the other hand, respondents argue that the fact that the position is recognized in the salary ordinances as a distinct category for purposes of compensation, does not prevent the commission from exercising discretion in classification for examination purposes, and rely on *State ex rel. Reilly v.*

*Civil Service Comm.*, 8 Wn. (2d) 498, 112 P. (2d) 987, 134 A. L. R. 1100.

█ It must be remembered that this is an action in mandamus. Mandamus will only lie to compel the performance of a duty enjoined by law, and does not lie to control discretion. The only question presented in this case, therefore, is whether there was any duty enjoined by law which compelled the civil service commission to classify "maintenance laborer" as a separate position for purposes of examination, and further, if such duty was not enjoined, whether the action of the civil service commission was so arbitrary and capricious as to violate the city charter of the city of Seattle.

In the *Olson* case, the civil service commission of the city of Seattle adopted a resolution which allowed incumbent employees to be advanced without examination at times when the title of their job was changed, even though new employees were required to take an examination for the higher position, and the two positions were classified into two classes. It was decided by this court that an officeholder could not claim a right to a position simply because he or she was performing the duties which that position entailed, and that the resolution was invalid. The *Olson* case is not in point because there is no factual similarity to the case at bar.

In the *Reilly* case, the civil service commission of the city of Spokane had classified for examination the position of detective and patrolman in the same class, though the duties and salaries differed. In deciding the case, this court concluded that the question to be determined was within the discretion of the civil service commission, and that mandamus did not lie.

The language of ordinance No. 75600, § 31, which we have set out, makes it clear that the title given a position in a salary ordinance does not govern the class of the position.

█ It is true that, at the time the examination was given in 1946, the position of maintenance laborer was specified and considered as a separate class, a promotional position in the series of classes in the labor line. It further appears,

however, that the commission decided to reclassify the position of maintenance laborer as part of the class of laborer, and that the city council adopted the action of the commission. The action of the commission and the city council constituted a valid change in accordance with the requirements of article XVI of the city charter and the civil service rules. This being true, it follows that the *Reilly* case is controlling, in that the action of the commission and city council brought about the reclassification.

■ The *Reilly* case is also controlling on the question of the use of discretion. In that case, the civil service commission had classified the positions in the police department in three classes—patrolman, sergeant, and captain. Appellants there sought to compel the commission to provide additional classifications, and to establish an eligibility list by examination from which to fill vacancies in the detective division of the police department. The position of detective, or plainclothesman, was being supplied by transfers. The charter of the city of Spokane provided that the civil service commission should classify all employees, except day laborers and certain appointive officers. This court held that the civil service commission had not abused its discretion by not making the classification mentioned above.

There is no difference in principle in the case at bar and the *Reilly* case. In the cited case, the commission refused to make the classification in accordance with the strict interpretation mentioned in the charter. In the case at bar, the commission acted in accordance with the directions of the civil service code and the civil service rules, and their action was approved by the city council. In our opinion, a discretion was lodged in the commission and the council. We are unable to hold that that discretion was abused.

■ Appellants claim that the trial court erred in admitting exhibits 6 and 8. Exhibit 6 was a letter signed by three employees of the commission, containing their arguments and recommendations relative to the examinations. Exhibit 8 consisted of a collection of letters, memoranda, and minute entries from the files of the civil service commission relating to the position of maintenance laborer. In

our opinion, this evidence was admissible to .prove that the commission had considered the problem and had not acted capriciously.

In any event, this court cannot presume that the evidence was used by the trial court for any purpose for which it was not admissible. *Mapes v. Mapes*, 24 Wn. (2d) 743, 167 P. (2d) 405; *McJannet v. Strehlow Supply Co.*, 25 Wn. (2d) 468, 171 P. (2d) 173.

Finding no error, we affirm the judgment.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and HILL, JJ., concur.