[No. 4499-8-III. Division Three. July 1, 1982.]

THE COUNCIL OF COUNTY AND CITY EMPLOYEES, ET AL, *Appellants,* v. SPOKANE COUNTY, ET AL, *Respondents.*

*Marsha M. Saylor,* for appellants.

*Donald C. Brockett, Prosecuting Attorney,* and *James P. Emacio, Deputy,* for respondents.

GREEN, J.—The Washington State Council of County and City Employees, AFSCME, AFL–CIO, and its Local 1135 (Council) applied for a writ of mandate to require Spokane County and its commissioners (County) to arbitrate a grievance under a collective bargaining agreement. The application was denied and the Council appeals. The sole issue is whether the collective bargaining agreement precludes arbitration of the grievance. We reverse.

The grievance, filed July 11, 1980, requested overtime pay for an alleged unilateral change in work assignments which necessitated additional travel time. It stated:

Past practice of reporting to normal assigned District shops and then proceeding to daily work assignments has suddenly been unilaterally changed. I am now required to

report to a different District shop which has required additional travel time.

The law provides through case history, that the County is responsible for the employee and his travel time during temporary work adjustments that require additional travel and therefore, case law concludes that employees shall be paid for that additional travel time to the work site prior to normal reporting time and return to past practice of reporting time and place and then proceeding to work assignments by county vehicle. This is in accordance with past practice over several years with the oiling crew, bridge crew, spraying crew and other temporary assignments which has been to report to normal work location and then proceed to assigned work sites.

In accordance with the collective bargaining agreement, the grievance was reviewed by the county engineer and the board of county commissioners. Both determined the issue was not subject to the grievance procedures. On October 20, the County advised the Council it would not agree to submit the dispute to arbitration.

On January 15, 1981, the Council applied for a writ of mandate to require arbitration. The court denied the application, concluding the Council had alleged but had not shown a violation of the collective bargaining agreement and there was no showing the County's refusal to arbitrate was arbitrary and capricious.

The Council contends the court erred in requiring it to prove a violation of the agreement and refusing to grant the writ of mandamus even though the County had breached a contractual duty to arbitrate. We agree.

██ ██ In *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. 150, 627 P.2d 1330 (1981), this court reiterated the rules set forth in the "Steelworkers' Trilogy".[1] Those rules are generally: (1) Although it is the court's duty to determine whether the parties have agreed

---

[1] *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960).

to arbitrate a particular dispute, the court cannot decide the merits of the controversy, but may determine only whether the grievant has made a claim which *on its face* is governed by the contract. (2) An order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. (3) There is a strong presumption in favor of arbitrability; all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication. *See Nolde Bros. v. Local 358, Bakery & Confectionery Workers,* 430 U.S. 243, 51 L. Ed. 2d 300, 97 S. Ct. 1067 (1977).

Article 5 of the collective bargaining agreement contains a 5–step grievance procedure ending in arbitration, "[s]hould an employee *feel* that his rights and privileges under this Agreement have been violated, . . ." Section 3, article 11 states:

Authorized overtime at the rate of one and one–half (1½) times the regular rate shall be paid for any work beyond eight (8) hours of a regular work day or for work beyond forty (40) compensated hours of the regular work week.

The work for which overtime is authorized is not specified in the collective bargaining agreement. Thus, whether overtime is authorized for additional travel time when work locations are changed requires an interpretation of the agreement in light of past practices and is a question for the arbitrator. Therefore, the grievance on its face is covered by the arbitration clause.

The County contends the arbitration clause in this case is narrower than those contained in the "Steelworkers' Trilogy" cases or in *Meat Cutters.* It is argued this agreement does not provide for arbitration over interpretation or application of the provisions contained in the collective bargaining agreement; instead, it requires an employee to prove a violation of his rights and privileges under the agreement. We disagree.

■ There is nothing on the face of the agreement that requires an employee to *prove* a violation of its terms to obtain arbitration of a dispute. Neither does it exclude arbitration over interpretation and application of the agreement. To the contrary, it anticipates differences over interpretation by providing a grievance procedure "should an employee *feel* that his rights and privileges have been violated . . ."

> Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

*United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 581, 4 L. Ed. 2d 1409, 80 S. Ct. 1347, 1352 (1960); *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc., supra* at 156–57. In the absence of a specific exclusion, the agreement must be held to authorize arbitration over interpretation and application of the overtime provision to the grievance.

■ Notwithstanding, the County contends the grievance, as alleged, relates only to the ability of the county engineer to unilaterally change employee work locations, and the parties expressly excepted that matter from the grievance procedures by virtue of the "management's rights" clause:

> The County Engineer retains the exclusive right to manage, direct and control the County Road Department functions in all particulars, except as limited by the terms of this Agreement.

We disagree. The grievance, read as a whole, involves the right to overtime pay when work locations are changed; the management's rights clause does not exclude arbitration over that dispute. Even if management rights are involved, as we stated in *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc., supra* at 157, quoting *Warrior,* at page 584:

"Strictly a function of management" might be thought to refer to any practice of management in which, under particular circumstances prescribed by the agreement, it is permitted to indulge. But if courts, in order to determine arbitrability, were allowed to determine what *is* permitted and what is not, the arbitration clause would be swallowed up by the exception. Every grievance in a sense involves a claim that management has violated some provision of the agreement.

The arbitration clause in this case is susceptible of *an* interpretation that covers the asserted dispute. We decline to "become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *United Steelworkers v. Warrior & Gulf Nav. Co., supra* at 585; *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc., supra* at 159. *See also Shoreline Sch. Dist. 412 v. Shoreline Ass'n of Educ. Office Employees,* 29 Wn. App. 956, 631 P.2d 996, 639 P.2d 765 (1981).

■ The County argues the court was nevertheless correct in dismissing the writ of mandamus because its refusal to arbitrate was neither a breach of a legal duty enjoined by law nor so arbitrary it amounts to a total failure to exercise discretion. *Adams v. Seattle,* 31 Wn.2d 147, 151, 195 P.2d 634 (1948); *Mattox v. State Bd. Against Discrimination,* 13 Wn. App. 406, 412, 535 P.2d 470 (1975). It claims the public employment statute, RCW 41.56.122, creates a duty to arbitrate only if the collective bargaining agreement specifically includes the language of that section:

A collective bargaining agreement may:

. . .

(2) Provide for binding arbitration of a labor dispute *arising from the application or the interpretation of the matters contained in a collective bargaining agreement.*

(Italics ours.) The strong public policy favoring arbitration which is encompassed in this statute would not be furthered by such a restrictive interpretation. The Council made a showing its grievance involves interpretation and

application of the employees' rights under the collective bargaining agreement and the arbitration clause covered the asserted dispute. Further, RCW 41.56.140 states:

It shall be an unfair labor practice for a public employer:

(1) To interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by this chapter; . . .

The Council was given the right and the County, therefore, had a duty to arbitrate this grievance under the terms of their agreement. The writ of mandate should issue.

Reversed.

McINTURFF, C.J., and MUNSON, J., concur.

Reconsideration denied August 13, 1982.

Review denied by Supreme Court November 8, 1982.