[Nos. 52153–1, 51151–9. En Banc. January 22, 1987.]

JULIUS REESE, ET AL, *Appellants,* v. SEARS, ROEBUCK & CO., *Respondent.*

WILLIAM BEAUCHAMP, *Appellant,* v. COLUMBIA LIGHTING, INC., *Respondent.*

564

*Thomas M. Geisness* and *Lonnie Davis,* for appellants Reese.

*Gaither M. Kodis* and *Stiley & Kodis, P.S.,* for appellant Beauchamp.

*Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* by *Michael A. Patterson,* for respondent Sears.

*Charles Matthew Andersen, Beverly L. Anderson,* and *Winston & Cashatt,* for respondent Columbia Lighting.

*Charles K. Wiggins, Gary N. Bloom,* and *Douglass A. North* on behalf of Washington Trial Lawyers Association;

*Kenneth O. Eikenberry, Attorney General,* and *Winslow Whitman, Assistant; Douglas N. Jewett, City Attorney for the City of Seattle,* and *M. Colleen Barrett* and *Susan Rae Sampson, Assistants;* and *Brian J. Linn,* amici curiae for appellants.

*Seth R. Dawson, Prosecuting Attorney for Snohomish County,* and *Marya J. Silvernale, Deputy,* amici curiae for respondents.

UTTER, J.—Julius and Betty Reese and William Beauchamp appeal summary judgment dismissals of their employment discrimination claims. Their appeals have been consolidated because they raise an identical question of law: whether the exclusive remedy provision of the Industrial Insurance Act (IIA), RCW 51.04.010, bars employee actions against their employers for disability discrimination under the Law Against Discrimination, RCW 49.60. Reese and Beauchamp argue that the two acts in question have significantly different purposes and seek to remedy different types of injuries. They contend that an IIA claim for a physical injury suffered on the job should not bar an action to recover for the additional harm suffered from management's subsequent, and allegedly discriminatory, response to the resulting disability. We agree, and because we reject additional arguments made in support of the trial court by respondent employers, Sears, Roebuck & Co. and Columbia Lighting, Inc., we reverse the trial courts and remand for trial.

The facts, taken from the complaints and affidavits of the nonmoving parties and viewed in a light most favorable to appellants, are as follows.

### Reese v. Sears, Roebuck & Co.

Julius Reese had been employed by Sears as a warehouseman since 1968. In April 1980, he began receiving medical treatment for chronic foot pain and could no longer do the heavy work assigned to him. Reese's physician advised Sears that Reese should receive light duty work.

Sears refused to allow Reese to return to work until he could "work full capacity." Soon thereafter, Reese filed a workers' compensation claim based on his foot injury. The Board of Industrial Insurance Appeals approved Reese's claim, and on January 4, 1984 a King County Superior Court affirmed the Board of Appeals order.

After suffering the injury to his foot, Reese sought to continue work "by performing Grade 12 clerical and light manual work." Sears refused to make any accommodation for Reese's new handicap, and on January 14, 1982, refused to continue employing Reese absent a full medical release, which Reese's physician could not give. As a result of Sears' 1982 decision to terminate Reese's employment, Reese and his wife brought this action for handicap discrimination under RCW 49.60, alleging that Sears had failed to reasonably accommodate Reese's (heel/foot) disability.

Sears moved for summary judgment, offering three legal theories to support its contention that Reese's discrimination action was barred as a matter of law. The King County Superior Court granted Sears' summary judgment motion, and dismissed Reese's claim, but did not indicate which legal theory supported its decision.

Reese appealed to Division One of the Court of Appeals, but on October 18, 1985, that appeal was administratively transferred to this court.

### Beauchamp v. Columbia Lighting, Inc.

William Beauchamp was employed as a fabricator by Columbia Lighting, Inc. (Columbia), pursuant to a collective bargaining agreement. This agreement provided for a 1-year leave of absence by an employee for medical reasons. It also provided for a 5-step grievance procedure should any dispute arise between the parties based on the interpretation or application of any part or portion of the agreement. On February 20, 1981, Beauchamp took a leave of absence for chronic bronchitis. He immediately filed a workers' compensation claim under the IIA alleging that toxicity in the air at Columbia caused his bronchitis.

Beginning March 21, 1981, Beauchamp has received time-loss benefits for his condition. Columbia has appealed the Department of Labor and Industries' determination that Beauchamp's injury (*i.e.*, the bronchitis) resulted from toxicity at Columbia. Beauchamp's workers' compensation claim is still in dispute.

On February 19, 1982, within the 1-year period for medical leaves of absence, Beauchamp presented Columbia with a letter from his physician stating that Beauchamp could return to work if he wore a "gas mask." Columbia refused to accommodate Beauchamp's need to wear a gas mask, and refused to allow him to return to work. On June 23, 1982, as a result of management's decision, but without pursuing the contract grievance procedure, Beauchamp brought this suit, alleging that Columbia's failure to return him to work constituted a refusal to accommodate his asserted handicap in violation of RCW 49.60. Columbia moved for summary judgment, offering three legal theories to support its motion. The Spokane County Superior Court granted Columbia's motion for summary judgment, but did not specify which legal theory it found persuasive.

Beauchamp appealed directly to this court, but his appeal was transferred to Division Three of the Court of Appeals. Subsequently, Beauchamp's appeal was transferred back to this court and consolidated with the Reese appeal.

Summary judgment is appropriate only if, after considering all facts and reasonable inferences in the light most favorable to the nonmoving party, the court finds there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Here, the trial courts dismissed appellants' claims because they found them barred as a matter of law. Since neither trial court indicated which legal theory it relied upon, this court must review the five theories offered at trial: (1) Both employers argue that the exclusive remedy provision of the IIA precludes their employees' discrimination claims; (2) Sears

argues that Reese's claim is barred by the election of remedies doctrine; (3) Sears also argues that Reese's claim is barred because he was unable to perform the duties of his previous position; (4) Columbia argues that the exclusive remedies of the collective bargaining agreement barred Beauchamp's discrimination claim; and (5) Columbia argues that Beauchamp failed to establish a prima facie case of handicap discrimination.

I

To support their contention that the IIA exclusive remedy provision barred their employees' discrimination actions, respondents characterized the discrimination claims as arising out of the same injuries and set of facts as the IIA claims. We disagree. Appellant employees claim to have suffered two separate and distinct injuries: a physical injury suffered in the workplace and actionable under the IIA; and a subsequent injury allegedly caused by the employers' handicap discrimination, which is actionable under the Law Against Discrimination. When viewed as appellants contend, no conflict exists between the two laws in question. The Legislature enacted the laws to remedy the two very different kinds of injuries the employees claim to have suffered.

In enacting the IIA in 1911, the Legislature noted how ineffective the common law had been in redressing worker claims for injuries they suffered in the workplace:

The common law system governing the remedy of workmen against employers for injuries received in employment is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the worker and that little only at large expense to the public. The remedy of the worker has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. . . .

Laws of 1911, ch. 74, § 1 (codified at RCW 51.04.010). To

address this problem the Legislature provided "sure and certain relief for workers" and provided for the exclusivity of workmen compensation actions. Laws of 1911, ch. 74, § 1 (codified at RCW 51.04.010). The statutory language demonstrates that, from its inception, the IIA was designed to remedy only physical injuries. *See, e.g.,* Laws of 1911, ch. 74, § 3. So narrow was the statutory definition of "injury" that even some physical ailments were not remedied under the act. *See, e.g., Depre v. Pacific Coast Forge Co.,* 145 Wash. 263, 259 P. 720 (1927). While the definition of "injury" has been expanded, *see* RCW 51.08.100, and an additional basis for IIA recovery has been added, *see* RCW 51.08.140, the Legislature's intent to remedy physical injuries remains untouched.

Enacted in 1949, the Law Against Discrimination, RCW 49.60, sweeps more broadly than the IIA. The Legislature declared the purpose of RCW 49.60 as:

[A]n exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, sex, marital status, age, or the presence of any sensory, mental, or physical handicap are a matter of state concern . . .

RCW 49.60.010. The Law Against Discrimination seeks to remedy an evil that "threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010. In contrast, the IIA only provides the individual employee with a remedy for harm resulting from physical injuries suffered in the workplace, thus indirectly protecting the state's interest in its industries. *See* RCW 51.04.010. Unlike the IIA, the Law Against Discrimination seeks to remedy nonphysical injuries, similar to dignitary torts, *see Anderson v. Pantages Theatre Co.,* 114 Wash. 24, 194 P. 813 (1921), that have far–reaching social, political and economic implications.

Evidencing its concern to correct this complex of problems, the Legislature expressly required that the Law Against Discrimination "be construed liberally" to accomplish its purposes. It also intended to *repeal any provision "which purports to require or permit doing any act which is an unfair practice under this chapter."* (Italics ours.) RCW 49.60.020. Thus, the Legislature expressly foreclosed the possibility that discriminatory actions might be insulated from remedy by virtue of earlier enacted laws. Because we must, for this appeal, accept the plaintiffs' claims of discrimination, we cannot ignore this unambiguous expression of legislative intent.

Amicus curiae on behalf of Snohomish County contends that recent IIA statutes, passed between 1982 and 1985, evidence specific legislative intent to protect handicapped workers from discrimination, so that the IIA exclusive remedy provision should be found to bar employees' discrimination actions. In 1982, the Legislature enacted the Vocational Rehabilitation Act, Laws of 1982, ch. 63, for injured employees who were precluded or likely to be precluded from working in their preaccident positions because of their work–related injuries and who would benefit from rehabilitation. The act provided for rehabilitation and reemployment services and established an administrative body that could require an employer to reasonably accommodate a rehabilitated employee. RCW 51.41.040. In April 1983, the act was declared retroactive to "benefit otherwise eligible injured workers", whose claims were still open. Laws of 1983, ch. 70, § 1; RCW 51.41.005. In 1985, however, the Legislature recognized that its newly created rehabilitation program had "failed to assist injured workers to return to suitable gainful employment without undue loss of time from work and has increased costs of industrial insurance for employers and employees alike." Laws of 1985, ch. 339, § 1. While preserving some of the elements of the original program, including requiring employer accommodation after successful rehabilitation, *see* RCW 51.32-.095, the Legislature repealed RCW 51.41.

We find the rehabilitation program requirements inapplicable in the case at hand. Appellant employees do not come under these provisions for a variety of reasons: they were ready to return to work given reasonable accommodation; no rehabilitation plan had been adopted by the Department of Labor and Industries; and there is no evidence in the record that appellants could have benefited from further rehabilitation. Moreover, the rehabilitation statutes do not seek to provide employees a cause of action in the event that employers, as alleged in this case, engage in unlawful handicap discrimination. *See* RCW 51.32.095.

To support their exclusivity argument, respondent employers point to specific language used in *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 241–42, 588 P.2d 1308 (1978). There, we stated that "[w]ith certain specified exceptions, the [IIA] abolishes judicial jurisdiction over *all* civil actions for personal injuries arising between employees and the employers." *Seattle–First,* 91 Wn.2d at 242. By "certain specified exceptions," we referred to statutory exceptions such as RCW 51.24.020, which preserves employee tort actions against employers for intentional injury. We did not mean to imply in *Seattle–First* that all other types of civil actions between employers and employees were foreclosed. Rather, in referring to "all civil actions," we were discussing civil tort actions "premised upon the 'fault' of the employer vis–a–vis the employee" for workplace injuries compensable under the IIA. *Seattle–First,* 91 Wn.2d at 242. There, we held that "courts have no jurisdiction over an action premised upon or necessarily involving this 'immunized' area of *tort law.*" (Italics ours.) *Seattle–First,* 91 Wn.2d at 242.

Unlike IIA actions, employment discrimination actions do not come within this "immunized area of tort law." As with workers' compensation statutes generally, the IIA arose at the turn of the century to address "the coincidence of increasing industrial injuries and decreasing remedies." Larson, *The Nature and Origins of Workmen's Compensation,* 37 Cornell L.Q. 206, 231 (1952). The act provided

workers with a sure but limited remedy for physical injuries suffered in the workplace. In return, workers relinquished their right to a tort action, a right rendered useless by such defenses as the fellow servant rule, contributory negligence, and assumption of risk. *E.g.,* Note, *Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes,* 96 Harv. L. Rev. 1641, 1643–45 (1983).

The Law Against Discrimination is not similarly rooted in tort law. Rather, it grows out of the fundamental principle that every citizen deserves equal treatment without regard to race, color, religion, sex, or handicap. *See Freeman v. Kelvinator, Inc.,* 469 F. Supp. 999, 1033 (E.D. Mich. 1979). Its origins and purposes, as well as the facts giving rise to a claim under it, differ markedly from those of the IIA.

Harmonizing legislative acts is a traditional responsibility of this court. Even if an apparent conflict existed between the IIA and the Law Against Discrimination, we would be obliged to reconcile that conflict and give effect to both statutory schemes, if this could be achieved without distorting the statutory language. *See Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 391–92, 645 P.2d 697 (1982); *State v. Fagalde,* 85 Wn.2d 730, 736–37, 539 P.2d 86 (1975). Here, however, there is no conflict between the two statutory schemes. Under the IIA, appellant employees sought recovery for their out of pocket costs (lost wages, medical bills, disability allowance) attributed to a specifically defined physical injury, *see* RCW 51.08.100, or a disease, *see* RCW 51.08.140, that arose out of their employment.

In contrast, under the Law Against Discrimination appellant employees claim they were injured, not by the physical workplace injuries that gave rise to their respective disabilities, but by a particular employer action taken months after they became disabled. It is the *employer response* to the disabled worker that is at issue. Appellants' claimed injuries in this action turn *exclusively* on the employers' deliberate behavior. For purposes of the Law Against Discrimination, it does not matter how the handi-

cap arose; only the employer's response to the handicap matters. In fact, the employee need not even be handicapped to bring an action under RCW 49.60. *Barnes v. Washington Natural Gas Co.,* 22 Wn. App. 576, 591 P.2d 461 (1979). In *Barnes,* the plaintiff prevailed when he demonstrated that his employer had erroneously perceived him to be suffering from epilepsy and had acted on that misperception. 22 Wn. App. at 582–83.

■ Inasmuch as there is no conflict, we need not choose *between* giving full effect to either the Law Against Discrimination or the IIA exclusive remedy provision. The Legislature's intent is upheld by protecting the integrity of both statutory schemes. No one is excluded from the protection of the Law Against Discrimination. Under the IIA, employees will continue to receive the sure but limited remedy for their workplace physical injuries, and employers will remain protected from all court actions arising out of those injuries.

This conclusion agrees with the only other court to address this issue. In a consolidated case, *Boscaglia v. Michigan Bell Tel. Co.,* 420 Mich. 308, 362 N.W.2d 642 (1984), the Michigan Supreme Court held that the Civil Rights Act and the Workers' Compensation Act were directed to different ends; the former to protect against "'the prejudices and biases' one race, sex, or religion bears against another", the latter to protect victims of industrial injuries who had been deprived of other remedies because of common law doctrines such as contributory negligence and the fellow servant rule. *Boscaglia,* 420 Mich. at 315. Each statutory scheme addressed separate problems without mentioning the other scheme. Rather than allowing one statutory scheme to frustrate the other's purposes and objectives, the unanimous court held that the exclusive remedy provision in the workers' compensation law did not bar the plaintiffs' actions for discrimination. *Boscaglia,* 420 Mich. at 316.

In sum, we hold that appellant employees' discrimination actions are not barred by the IIA exclusive remedy provi-

sion. Appellants claim to have suffered two separate injuries—a workplace physical injury and a subsequent injury arising from the employers' alleged handicap discrimination. Because the injuries (1) are of a different nature, (2) must arise at different times in the employee's work history, and (3) require different causal factors (an IIA claim is indifferent to employer fault, a discrimination claim requires such fault), the two injuries cannot be "the same injury." Since the Legislature intended the IIA and the Law Against Discrimination to address the two separate injuries alleged by the appellants, no conflict exists between the two statutes in question.

## II

There are no election of remedies or double recovery problems as contended by respondent Sears. Here, there are two distinct wrongs. In addition, any possible double recovery can be easily avoided. Appellants' potential damage recoveries under RCW 49.60 date from when their discrimination claims matured: when their employers refused to allow them to report back to work and allegedly refused to reasonably accommodate their handicaps. Should appellants prevail at trial, IIA benefits received after this date can be deducted from their discrimination damages wherever necessary to prevent double recovery.

█ Finally, Sears claims that Reese's discrimination claim fails as a matter of law because Reese concedes he was unable to perform the duties of his previous position. Sears argues that it has no duty to provide a handicapped employee with an alternative position. This argument is no longer tenable. We recently ruled that the employer requirement "to make *reasonable accommodation* for handicapped employees" implies that the employer may be required to notify and consider the employee for other jobs for which he is qualified. *Dean v. Metropolitan Seattle,* 104 Wn.2d 627, 632, 708 P.2d 393 (1985). Whether other alternatives are available for which Reese was a qualified applicant is an issue for the fact trier.

## III

Columbia argues that Beauchamp's discrimination claim is barred as a matter of law by his failure to exhaust contractual remedies under the collective bargaining agreement. In support of its contention, Columbia characterizes Beauchamp's claim as strictly contractual in nature, arising out of Columbia's alleged failure to honor the bargaining agreement's leave of absence provision. Consequently, Columbia contends that Beauchamp is restricted to the exclusive remedy of the collective bargaining agreement, the 5–step grievance procedure. We disagree with Columbia's characterization of Beauchamp's claim as a right to reemployment under the contract. Rather, Beauchamp claims his right to reemployment was abridged by Columbia's refusal to reasonably accommodate his handicap, in violation of RCW 49.60. Because Beauchamp bases his claim on a statutory civil right, rather than a contractual one, we must decide whether the exclusive remedies provision of a collective bargaining agreement bars an action to assert a civil right. We hold that it does not.

In *State ex rel. Barb Restaurants, Inc. v. State Bd. Against Discrimination,* 73 Wn.2d 870, 878, 441 P.2d 526 (1968), we held that employees had a choice of how to enforce their right to be free of unlawful discrimination. They could vindicate their rights either under a union bargaining agreement or by civil action under RCW 49.60, but not by both. *Barb Restaurants,* 73 Wn.2d at 878. A choice was mandated by the election of remedies requirement contained in RCW 49.60.020. In 1973, the Legislature removed the election requirement. Laws of 1973, ch. 141, § 2. Since that time no Washington cases have addressed whether an employee claiming unlawful discrimination must proceed under a collective bargaining agreement rather than by a statutory action under RCW 49.60.

As an aid in construing RCW 49.60, we have often looked to relevant federal cases interpreting Title VII, § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 (1982). *See, e.g., Glasgow v. Georgia–Pacific Corp.,* 103

Wn.2d 401, 406 n.2, 693 P.2d 708 (1985); *Fahn v. Cowlitz Cy.*, 93 Wn.2d 368, 376, 610 P.2d 857, 621 P.2d 1293 (1980). The United States Supreme Court has discussed the exclusivity of collective bargaining agreement remedies in the context of an employee's claim that his discharge was racially motivated. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974). After unsuccessfully challenging the discharge pursuant to the bargaining agreement, the employee brought a Title VII action. In holding that the employee did not forfeit his Title VII cause of action by having already submitted his claim to final arbitration, the Supreme Court reasoned:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective–bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

415 U.S. at 49–50. While statutory rights related to *collective* activity could be waived in a collective bargaining agreement (*e.g.*, a no–strike clause), an *individual's* Title VII right to equal employment opportunities could not. *Gardner–Denver*, 415 U.S. at 51. In addition, the Court found that contractual grievance and arbitration procedures provide an inadequate forum for enforcing statutory rights granted to individuals. *Gardner–Denver*, 415 U.S. at 57.

In extending the *Gardner–Denver* reasoning and rationale to protect private actions under the Fair Labor Standards Act, the Court reemphasized that

> [w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective–bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.

*Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 737, 67 L. Ed. 2d 641, 101 S. Ct. 1437 (1981). Both *Barrentine* and *Gardner–Denver* concerned employees who had unsuccessfully pursued their claims under a collective bargaining agreement. Federal and state courts, however, have applied the *Gardner–Denver* rationale to hold that the existence of a dispute resolution procedure in a collective bargaining agreement, such as we have here, will not bar an employee from asserting a statutory right in state court. *See, e.g., Galion v. Dollar,* 666 F.2d 1309 (10th Cir. 1981); *Vaughn v. Pacific Northwest Bell Tel. Co.,* 289 Or. 73, 611 P.2d 281 (1980).

The *Gardner–Denver* reasoning and rationale are persuasive. The statutory scheme designed by the Legislature in RCW 49.60 confers on individual employees a substantive right to be free from unlawful employment discrimination and provides a personal cause of action to vindicate that right. *See, e.g.,* RCW 49.60.030, .180, .230. Arbitral procedures, while well suited for resolving contractual disputes, are not appropriate for resolving civil rights disputes. *See Gardner–Denver,* 415 U.S. at 57–58. Consequently, we conclude that the comprehensive statutory scheme contained in RCW 49.60 evidences the Legislature's intent to allow individual employees to pursue their statutory rights independently from the remedies of a collective bargaining agreement. The Oregon Supreme Court reached a similar conclusion in interpreting Oregon's equivalent to RCW 49.60. *Vaughn,* 289 Or. at 87 (construing Or. Rev. Stat. §§ 659.121, 659.410, 659.415 as affording an alternative or supplement to existing remedies in a collective bargaining agreement).

Columbia has called to our attention the long–standing state and federal requirement that employees comply with the grievance procedure before seeking a judicial remedy. *See, e.g.,* cases cited in *Gardner–Denver,* 415 U.S. at 46 n.6; *Tombs v. Northwest Airlines, Inc.,* 83 Wn.2d 157, 516 P.2d 1028 (1973); *Council of Cy. & City Employees v. Spokane Cy.,* 32 Wn. App. 422, 647 P.2d 1058 (1982). Columbia con-

cludes that if we fail to honor the contract grievance procedure this long–standing requirement would become meaningless. Again we agree with the Supreme Court, which while expressly reaffirming the values of arbitration, did not consider its ruling a "death knell for arbitration clauses in labor contracts.'" *Gardner–Denver*, 415 U.S. at 54. Employers will still find the clauses valuable because, in return, they receive the benefits of a no–strike provision and the efficacy of the grievance process for resolving most disputes. *Gardner–Denver*, 415 U.S. at 55. Moreover, the comprehensive statutory scheme in RCW 49.60 overrides any preexisting policy favoring exclusivity of collective bargaining agreement remedies. *See Vaughn*, 289 Or. at 87.

The Legislature intended actions under RCW 49.60 be independent from collective bargaining procedures. By amending RCW 49.60 to remove the election of remedies bar, Laws of 1973, ch. 141, § 2, the Legislature intended the statute to preserve all remedies an employee may have for an alleged violation of his civil rights. We therefore conclude that employees may choose to vindicate their civil rights by immediately filing a civil action under RCW 49.60 or they may wait, pursue a remedy under their collective bargaining agreement, and if their civil rights remain unenforced, file a civil discrimination action pursuant to RCW 49.60.

## IV

As its final legal theory, Columbia contends that Beauchamp failed to establish the requisite prima facie case of handicap discrimination. Because Beauchamp appeals from a summary judgment, we conduct our review by taking the position of the trial court, assuming facts most favorable to Beauchamp as the nonmoving party. *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Because the facts and inferences demonstrate a dispute as to material facts, we find the grant of summary judgment to be improper.

Elements of a prima facie case of discrimination may vary depending on the individual case. *Dean v. Metropoli-*

*tan Seattle,* 104 Wn.2d 627, 637, 708 P.2d 393 (1985) (citing *Texas Dep't of Comm'ty Affairs v. Burdine,* 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)). Similar to *Dean,* the situation here involves an alleged failure to reasonably accommodate an employee's handicap that developed while in the service of the employer. *Dean,* 104 Wn.2d at 637. To make a prima facie case Beauchamp must prove: (1) that he is handicapped; (2) that he had the qualifications to fill a vacant position; and (3) that Columbia failed to reasonably accommodate the handicap. *See Dean,* 104 Wn.2d at 639. Once an individual establishes a prima facie case of handicap discrimination, the burden shifts to the employer, who must demonstrate some nondiscriminatory reason for the refusal to hire or to accommodate. *See Rose v. Hanna Mining Co.,* 94 Wn.2d 307, 313, 616 P.2d 1229 (1980).

 To the extent that Beauchamp must show his qualifications for the job, there appears to be no dispute; he previously held the job in question and that position remains open. Columbia argues that Beauchamp has not demonstrated that he suffered from a handicap at the time of the alleged discrimination, and, in any event, Beauchamp's condition was an occupational injury, not a handicap. Beauchamp claims to have contracted chronic bronchitis from toxic fumes at the workplace. The fact that his condition developed as an occupational injury does not affect its status as a handicap. Whether chronic bronchitis constitutes a handicap under RCW 49.60 is a matter of law. *Kimmel v. Crowley Maritime Corp.,* 23 Wn. App. 78, 82, 596 P.2d 1069, *review denied,* 92 Wn.2d 1026 (1979). For the purposes of RCW 49.60, handicaps are defined as

> physical, mental, or sensory impairments that would impede that individual in obtaining and maintaining permanent employment and promotional opportunities. The impairments must be material rather than slight; static and permanent in that they are seldom fully corrected by medical replacement, therapy, or surgical means.

WAC 162–22–030; *see also Chicago, M., St. P. & P. R.R. v. State Human Rights Comm'n,* 87 Wn.2d 802, 805, 557 P.2d 307 (1976) (handicap is physical disability limiting capacity to work). Chronic bronchitis comes within this definition of handicap. Whether Beauchamp suffered from this handicap at the time of the alleged discrimination is a question of material fact inappropriately decided on summary judgment.

■ As to whether Columbia failed to reasonably accommodate the handicap, several documents in the record demonstrate that Columbia refused to allow Beauchamp to return to work wearing a gas mask. Columbia has moved to strike two of these documents because they were not supported by affidavit as required by CR 56(e). See Columbia's notice of appeal from IIA award, Clerk's Papers, at 100–03; letter from Columbia's personnel manager, Clerk's Papers, at 113. However, the record does not reveal any motion by Columbia at trial to strike the challenged documents. Where the record does not reveal a motion to strike before the entry of judgment, the deficiency is deemed waived. *Crabtree v. Lewis,* 86 Wn.2d 282, 544 P.2d 10 (1975). Whether Columbia's refusal to allow Beauchamp to wear a gas mask constitutes a refusal to reasonably accommodate is a question of material fact for the trier of fact to determine.

Each of the legal theories propounded to support the trial courts' summary judgments is insufficient. Appellant employees' discrimination claims are not barred as a matter of law. Summary judgments were therefore inappropriate. Attorneys for the Reeses have asked for attorney fees on appeal which they are entitled to if their claims under the act are meritorious. *Rose v. Hanna Mining Co., supra.* That has not yet been decided. The summary judgments are reversed, and each case is remanded for trial.

PEARSON, C.J., and BRACHTENBACH, DORE, CALLOW, and GOODLOE, JJ., concur.

DOLLIVER, J. (dissenting)—At issue is whether, when the handicaps claimed by a worker are a result of an injury covered by industrial insurance, the employee covered by and compensated by industrial insurance may, in addition to recovering benefits under RCW 51.04 *et seq.,* also recover against the same employer for alleged discrimination under RCW 49.60.

In allowing action under both statutes, the majority argues the "claimed injuries in this action [under the Law Against Discrimination] turn *exclusively* on the employers' deliberate behavior." Majority, at 572. While this in one sense may be true, the more important consideration is that the condition of plaintiffs which led to the alleged acts of discrimination by their employers was an identical injury to that for which plaintiffs were entitled to and did receive compensation under the Industrial Insurance Act, RCW 51.04.

These are not cases where plaintiffs are being denied employment because of preexisting handicapping conditions. If this were so, there would be no question but that actions could be brought under the Law Against Discrimination. Here, the injuries complained of have their roots in industrial injuries for which the exclusive remedy is under the Industrial Insurance Act. As the court has said:

We have consistently held that when an employer . . . pays its industrial insurance premiums pursuant to the Act the employer may no longer be looked to for recourse. The fund, created to provide for losses expected to occur, is the sole source of recovery.

With certain specified exceptions, the Act abolishes judicial jurisdiction over *all* civil actions for personal injuries arising between employees and the employers. In its place the State has provided employees with sure and certain relief regardless of the fault of due care of either the employer or employee. In effect, the Act "immunizes", from judicial jurisdiction, all tort actions which are premised upon the "fault" of the employer vis-a-vis the employee. The determination to abolish judicial jurisdiction over such "immunized" conduct was a leg-

islative policy decision. The wisdom of that decision is not a proper subject of our review.

(Citations omitted.) *Seattle–First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 241–42, 588 P.2d 1308 (1978).

The Industrial Insurance Act provides not only for the exclusive remedy for workers but for their families as well. *West v. Zeibell*, 87 Wn.2d 198, 550 P.2d 522 (1976). *See also Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 696 P.2d 1238 (1985). We have also held the act extends its protection to include third party actions arising out of an industrial injury. *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra.*

The majority attempts to circumvent the specific and explicit language of this court by suggesting the Law Against Discrimination is not rooted in tort law. That laws against discrimination *are* rooted in tort law is exactly what this court has held. *Anderson v. Pantages Theatre Co.*, 114 Wash. 24, 194 P. 813 (1921).

The majority then argues that since the Industrial Insurance Act applies only to physical injury recovery for the nonphysical injury caused by the alleged discrimination to plaintiffs is not barred. While employees may be able to recover when the discrimination is the underlying cause of the injury, this is not the case before us. Whatever injuries plaintiffs suffered because of the alleged discrimination of their employers, the discriminatory acts were based on the effects of industrial injuries.

The majority justifies its action by citing the Michigan case of *Boscaglia v. Michigan Bell Tel. Co.*, 420 Mich. 308, 362 N.W.2d 642 (1984), and reciting the familiar statement that "[h]armonizing legislative acts is a traditional responsibility of this court." Majority, at 572. As to *Boscaglia*, this court, as did the Michigan court, can rule by judicial fiat that a worker covered under the Industrial Insurance Act also is entitled to bring an action arising from the same injury under the Law Against Discrimination. To declare the Law Against Discrimination applicable here under the rubric of "harmonization" is no more than a convenient

disguise for judicial legislation.

The public policies enunciated by the Industrial Insurance Act and the Law Against Discrimination are legislative. The language in the Industrial Insurance Act is clear, unambiguous and exclusive. Except for specific legislatively authorized exceptions, the law for 75 years has been that recovery against an employer for an industrial injury is limited to the provisions of the Industrial Insurance Act. Even though the majority brushes aside the recent amendments to the Industrial Insurance Act as being ineffective and inapplicable, they give clear evidence that the Legislature wished to assist those whose injury, covered by industrial insurance, caused the handicap; and the Legislature provided that it be done under the provisions of the Industrial Insurance Act. This is surely a clear inference the Legislature intended the Industrial Insurance Act to be the exclusive remedy for all injuries which stem from an industrial injury.

The Industrial Insurance Act and the Law Against Discrimination are each broad and comprehensive; neither mentions the other. There is no legislative history of any kind as to whether the Law Against Discrimination should apply in circumstances such as the cases before us. If the Legislature wishes to amend the provisions of the Industrial Insurance Act so as to extend the rights of an injured worker to include an action under the Law Against Discrimination against an employer for consequences arising out of an industrial accident, it may do so. This ought to be done by the Legislature, however, and not by the court.

A profound and fundamental change in the scope of industrial insurance coverage is proposed by the majority. It may well be that this also would be the view of the Legislature. However, if it is the view of the Legislature, it ought to be implemented as the result of legislative design and action, not by the inadvertence of a random lawsuit. The legislative procedures, including full hearings and legislative debate, needed to discuss the issue and its consequences and to implement change are properly the pre-

584

rogative of the Legislature and beyond the ken of this court.

ANDERSEN and DURHAM, JJ., concur with DOLLIVER, J.

Reconsideration denied May 5, 1987.