[No. 29068-9-III.   Division Three.   June 2, 2011.]

CHELAN COUNTY, *Appellant,* v. CHELAN COUNTY DEPUTY SHERIFF'S ASSOCIATION ET AL., *Respondents.*

*Stanley A. Bastian* (of *Jeffers Danielson Sonn & Aylward PS*), for appellant.

*James M. Cline* (of *Cline & Associates*), for respondent.

¶1 SWEENEY, J. — The superior court here concluded that a memorandum of understanding, purporting to settle a labor dispute between a county and a deputy sheriff's association, did not rise to the level of a completed contract, and the court therefore refused to enforce it. We conclude that the dispute should have been referred to arbitration pursuant to a collective bargaining agreement, and we reverse and remand for further proceedings.

## FACTS

¶2 Dale England was a deputy sheriff in Chelan County, Washington. He was also a member of the Chelan County Deputy Sheriff's Association, a union. His boss was Sheriff Mike Harum. Deputy England made a prank call to what he thought was a friend. Unfortunately for him, he misdialed his friend's number and left a threatening message on a stranger's answering machine. The recipient called police,

who reported the call to the Chelan County Sheriff. The sheriff's department conducted an investigation, and Sheriff Harum ultimately fired Deputy England.

¶3 The association filed a grievance and demanded arbitration pursuant to its collective bargaining agreement (CBA) with Chelan County. The association and the county agreed to mediation, and that mediation resulted in a signed, handwritten memorandum of understanding. Essentially, Mr. England agreed to waive all claims against the county in exchange for a statement that the reason for his discharge was not sustained, for reinstatement of his employment with pay for six months, and for a promise to end any further investigations of him:

(1) Rescind discharge—reinstate to pay status effective Nov. 10 2008

(2) Charges for/RE phone msg incident—NOT sustained

(3) [R]eturn to paid leave status until May 31 2010

(4) Retroactive pay applies to salary plus assignment premiums, but not overtime,—includes new contract retro pay

(5) [M]edical premiums waived looking back + future

(6) [P]ost event issues—discipline resolved with no further action by the [Chelan County Sheriff's Office (CCSO)]— (a) cell phone (b) gun purchase (c) educ. pay

(7) [Unfair Labor Practice (ULP)]—England info: CCSO will develop policy by March 31 2010 re: records retention consistent with Seattle case—share with [Chelan County Deputy Sheriff's Association] and bargain if necessary

(8) Dale England waives all rights to file civil claims

(9) [L]eave accruals waived looking back and future

(10) [County] needs approval from Commission and will recommend ratification on Monday Nov 9 2009

(11) Parties will continue to engage in discussions to resolve pending ULP

Clerk's Papers (CP) at 9-10. The county agreed to prepare a formal settlement agreement.

¶4 The county commissioners ratified the memorandum of understanding, and the county prepared and sent the association a formal five-page settlement agreement. The association refused to sign the agreement three days later because of some statements Sheriff Harum made to a local radio station. The radio station had interviewed Mr. England and Sheriff Harum and broadcast the interviews. Mr. England said that they had agreed on how to settle the union's grievance. Sheriff Harum told the radio station that the parties had a tentative settlement agreement but that it was too early to announce that they had a final settlement agreement:

> There has been a settlement agreement but to what extent has not been completely worked out yet. So, it is a little premature in announcing that there has been a settlement, although we tentatively agreed on a settlement here recently after we met with the Deputy Sheriff's Association's attorney and their representatives. . . . But, again, there has not been a settlement, I guess ratified, at this point because everybody still has to agree to it, all parties, and we are hoping to have some kind of agreement here next week.

CP at 253. He also said he had a duty "to not employ deputies . . . that exhibit this type of behavior so what this settlement does is it basically disallows Dale England from being an employee of the Chelan County Sheriff's Office." CP at 253. The association thought the sheriff's comments suggested wrongdoing on Mr. England's part and were therefore contrary to the memorandum of understanding.

¶5 The county sued to enforce the terms of the memorandum of understanding. The association denied that the memo was a binding contract and asked that the court compel arbitration of the grievance. Both parties then moved for summary judgment.

¶6 The court concluded that it had jurisdiction to decide the issue and ruled as a matter of law that the memo did not rise to the level of a binding and enforceable agreement. It then denied the county's motion for summary judgment and dismissed its declaratory judgment action.

## DISCUSSION

¶7 This dispute raises two essential questions. Is the memorandum of understanding here, which anticipated a more formal agreement, sufficient standing alone to amount to an enforceable agreement? And, who gets to decide that question, the courts or an arbitrator? Of course, we address the latter question first.

¶8 The county urges that the memorandum of understanding represents a completed contract under traditional contract rules and cites a number of cases that suggest as much—cases that do not involve public employee labor disputes. *In re Patterson*, 93 Wn. App. 579, 969 P.2d 1106 (1999) (involving co-owner's action for partition and quiet title); *In re Marriage of Ferree*, 71 Wn. App. 35, 856 P.2d 706 (1993) (a dissolution case); *Morris v. Maks*, 69 Wn. App. 865, 850 P.2d 1357 (1993) (involving breach of fiduciary suit between partners in limited partnership); *Loewi v. Long*, 76 Wash. 480, 136 P. 673 (1913) (involving breach of contract claim for sale of hops). The association responds that this dispute (and necessarily the memorandum that purports to resolve the dispute) implicates the CBA and therefore is itself subject to arbitration. Whether this dispute over the legal efficacy of this memorandum is subject to arbitration is a question of law that we will review de novo. *Yakima County v. Yakima County Law Enforcement Officers Guild*, 157 Wn. App. 304, 325-26, 237 P.3d 316 (2010).

¶9 The courts have authority to determine whether parties to an action have agreed to arbitrate an underlying controversy. *Yakima County Law Enforcement Officers Guild v. Yakima County*, 133 Wn. App. 281, 285, 135 P.3d 558 (2006). But they have no authority to determine the merits of that controversy " 'unless it may be said with positive assurance the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula*, 130 Wn.2d 401, 413-14, 924 P.2d 13 (1996) (emphasis

omitted) (quoting *Council of County & City Emps. v. Spokane County*, 32 Wn. App. 422, 425, 647 P.2d 1058 (1982)). We presume, strongly presume, that a controversy between parties is covered by their arbitration agreement. *Id.* at 414. That presumption is rebutted only by evidence that shows expressly or by clear implication that the controversy is not covered. *Id.* "Thus, apart from matters that the parties specifically exclude, the questions on which they disagree must come within the scope of the grievance and arbitration provisions of the collective bargaining agreement." *Id.*

¶10 The arbitration provisions of this CBA apply to "any grievance." CP at 72. And a "grievance" is "a dispute involving the interpretation, application or alleged violation of any provision of this Agreement." CP at 71 (CBA, art. 9, para. 9.1). All agree that the association's objection to Mr. England's discharge is a "grievance" subject to arbitration. The county maintains, nonetheless, that the question of whether the parties settled Mr. England's grievance is not a "grievance." We find no provision in the CBA that excludes this settlement issue from arbitration. So the presumption that would seem to attach is that the dispute over the effect of this memorandum of understanding is subject to arbitration. *See Peninsula Sch. Dist.*, 130 Wn.2d at 414 (" '[A]ll questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication.' " (quoting *Council of County & City Emps.*, 32 Wn. App. at 425)). The CBA says, "Any grievance submitted to arbitration may be settled by the parties prior to the arbitration hearing," CP at 73, and "[a] grievance settled under any step hereof shall be binding on both parties and the employee(s)." CP at 72 (CBA, art. 9, para. 9.3). Ultimately, the county's action seeks to enforce a settlement agreement that the association says does not exist. Thus, the issue of whether a settlement agreement exists involves the application and the alleged violation of a provision of the CBA.

¶11 Moreover, CBAs generally are not to be read as standard contracts. And the court in *Inlandboatmens Union of Pacific v. Dutra Group* explains why:

"The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. The collective agreement covers the whole employment relationship."

279 F.3d 1075, 1079 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578-79, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). So even side agreements, such as the one before us, must be arbitrated "if the dispute relates to a subject that is within the scope of the CBA's arbitration clause." *Id.* at 1080.

¶12 We conclude that the legal effect of this memorandum of understanding is a question that should have been referred to arbitration. We, then, reverse the decision of the superior court and remand for further proceedings.

KULIK, C.J., and SIDDOWAY, J., concur.